IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DIPANJAN NAG, Ph.D.,

    **Plaintiff,**

v.

    Case No. 2:20-cv-3471
    JUDGE EDMUND A. SARGUS, JR.
    Magistrate Judge Elizabeth Preston Deavers

OHIO STATE UNIVERSITY, *et al.*,

    **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Defendant Ohio State Innovation Foundation's Motion to Dismiss Plaintiff's First Amended Complaint for Failure to State a Claim under Federal Rule of Civil Procedure 12(b)(6). ("Def.'s Mot.," ECF No. 21.) Plaintiff Dipanjan Nag, Ph.D. filed a response in opposition ("Pl.'s Resp." ECF No. 26) and Defendant replied ("Def.'s Reply," ECF No. 28). For the following reasons, the Court **DENIES** Defendant's Motion to Dismiss.

Also before the Court is Plaintiff's Motion for Leave to File Sur-Reply in Opposition to Defendant OSIF's Motion to Dismiss. (ECF No. 31.) Because the Court denies Defendant's Motion to Dismiss without considering Plaintiff's Sur-Reply, the Court **DENIES** Plaintiff's motion as **MOOT**.

## I. Background

Plaintiff Dipanjan Nag, Ph.D. filed this action on July 10, 2020 against Defendants Ohio State University (OSU), Ohio State Innovation Foundation (OSIF), Bruce McPheron, Ph.D., and Micheal Papadakis (collectively, "Defendants") alleging violations of Title VII of the Civil Rights Act of 1964, the First and Fourteenth Amendments to the United States Constitution, Sections

1981 and 1983 of Title 42 of the United States Code, and Sections 4112.02(I) and (J) of the Ohio Revised Code. (Compl., ECF No. 15.) OSU hired Dr. Nag as Associate Vice President of Technology Commercialization to work in OSU's Technology Commercialization Office (TCO) in the summer of 2016. (*Id.* ¶¶ 10, 13.) Dr. Nag was also appointed an officer and director of OSIF. (*Id.* ¶ 11.)

OSIF is a non-profit Ohio corporation wholly owned by OSU whose principal purpose is to license and market intellectual property created by OSU's academic departments. (*Id.* ¶ 5.) Dr. Nag alleges that OSIF has more than 15 OSU employees, including Dr. Nag, whose services are provided through a contractual arrangement between OSU and OSIF. (*Id.*) OSIF delegates hiring decisions to OSU. (*Id.*) The work is directed in part by OSIF. (*Id.*) Employees are paid in part using OSIF revenues and are intended to benefit from the contractual arrangements between OSU and OSIF. (*Id.*) As an officer of OSIF, Dr. Nag had voting rights, was indemnified for expense and liability purposes, and was required to attend meetings and participate in decisions concerning OSIF's activities. (*Id.* ¶ 11.) Dr. Nag was also assigned, as part of his duties for both OSU and OSIF, to enhance the revenue-generating function of OSIF. (*Id.* ¶ 13.) In turn, OSIF through contractual arrangements with OSU, provides OSU both general revenues and specific funds earmarked for the payment of TCO personnel expenses, including Dr. Nag's compensation. (*Id.*)

Over the next two years, Dr. Nag alleges that he experienced discrimination from some of his colleagues and supervisors at OSU and OSIF. (*Id.* ¶ 17.) Dr. Nag's supervisor, Matthew McNair, is an OSU Vice President and the President and Chief Executive Officer of OSIF. (*Id.* ¶ 14.) Dr. Nag alleges that Mr. McNair belittled and yelled at him without cause and refused to allow Dr. Nag to teach a TCO course that Dr. Nag co-created. (*Id.* ¶¶ 20, 22.) Dr. Nag also avers that Mr. McNair instructed him to not speak during meetings involving both OSU and OSIF (but

allowed white employees with less expertise and knowledge of the subject matter of the meetings to speak), and refused to let Dr. Nag speak to a panel arranged by a member of Congress despite a specific request from the member's staff. (*Id.* ¶ 20.) Finally, Mr. McNair allegedly falsely reported that Dr. Nag was responsible for morale problems within the TCO to higher-level OSU administrators, OSIF officers, and OSU Human Resources officials. (*Id.* ¶ 22.)

In February 2018, Dr. Nag filed an internal report to OSU Human Resources stating that Mr. McNair's conduct created a "hostile work environment based on sex, race, and ethnic origin." (*Id.* ¶ 23.) In reaction to the report, Dr. Nag alleges that Mr. McNair spoke to Michael Papadakis, OSU's Senior Vice President and Chief Financial Officer and OSIF's Chairman of the Board of Directors, as well as a human resources officer about whether Dr. Nag should be terminated. (*Id.* ¶¶ 6, 26.) In this conversation, McNair stated that Dr. Nag's "cultural issues stemming from growing up in India are part of the problem." (*Id.* ¶ 27.) Mr. McNair told Papadakis and others that Dr. Nag was "paranoid" and began excluding Dr. Nag from important ongoing assignments at OSIF. (*Id.* ¶¶ 25, 26.)

Dr. Nag issued a follow-up complaint to OSU Human Resources. (*Id.* ¶ 30.) Upon reading the draft investigative report issued by an OSU investigator, Dr. Nag alleges that Papadakis and Bruce McPheron, Ph.D., OSU's Executive Vice President and Provost and a director of OSIF, told the investigator that the report was "a bit light on the issues with respect to [Dr. Nag]." (*Id.* ¶ 30.) In response to Papadakis's feedback, Dr. Nag alleges the investigator amended the report to harshly criticize Dr. Nag's leadership performance while characterizing McNair's actions as "inappropriate behavior" that did not violate any OSU policies. (*Id.* ¶ 32.)

After the report, McNair allegedly continued to disparage Dr. Nag to OSU and OSIF colleagues in performance evaluations. (*Id.* ¶ 22.) McNair allegedly subjected Dr. Nag to an

abnormal number of reviews in which feedback was solicited from Dr. Nag's subordinates, peers, and supervisors. (*Id.* ¶ 35.) Dr. Nag emailed McPheron, in June 2018, that he was prepared to resign at the end of July. (*Id.* ¶¶ 6, 37.) McPheron convinced Dr. Nag to stay and, shortly after, McNair resigned from OSU and OSIF. (*Id.* ¶¶ 38, 39.) Thereafter, OSU and OSIF selected a white candidate with less technology transfer and intellectual property experience than Dr. Nag to replace McNair as OSU Vice President and OSIF President and CEO. (*Id.* ¶ 42.)

One month after hiring McNair's replacement, in August 2018, Papadakis and McPheron terminated Dr. Nag. In the termination meeting, Papadakis allegedly stated "the last straw for me was that lengthy rebuttal that you sent a week or two ago back to all of us with regards to your performance review." (*Id.* ¶ 47.) McPheron agreed with Papadakis, stating that Dr. Nag's filing of reports was "just not the way you lead." (*Id.* ¶ 47.) Dr. Nag's termination from OSU also resulted in his removal as an officer and director of OSIF, through Papadakis's authority as OSIF's board chair and OSU's general control over OSIF. (*Id.* ¶ 48.) OSU and OSIF subsequently replaced Dr. Nag with a white male. (*Id.* ¶ 50.)

Dr. Nag filed this suit against OSIF and others on July 10, 2020. OSIF now moves to dismiss the case against it for failure to state a claim upon which relief may be granted.

## II. Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677–78 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In determining this, a court must "construe the complaint in the light most favorable to the

4

plaintiff." *Inge v. Rock Fin., Corp.*, 281 F.3d 613, 619 (6th Cir. 2007). Furthermore, "[a]lthough for purposes of a motion to dismiss [a court] must take all the factual allegations in the complaint as true, [it][is] not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 677–79 (quoting *Twombly*, 550 U.S. at 556) (internal quotations omitted). "In ruling on a motion to dismiss, the Court may consider the complaint as well as (1) documents referenced in the pleadings and central to plaintiff's claims, (2) matters of which a court may properly take notice, [and] (3) public documents." *Overall v. Ascension*, 23 F. Supp. 3d 816, 824 (E.D. Mich. 2014) (citing *Yeary v. Goodwill Indus.-Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997)).

### III. Analysis

Defendant OSIF argues that dismissal is warranted because Dr. Nag did not adequately plead that (1) he has an employment relationship with OSIF (as required under Title VII), (2) OSIF employs at least 15 employees (as required under Title VII) or at least 4 employees (as required under Ohio Rev. Code §4112.01), (3) OSIF aided or abetted discrimination or retaliation under Ohio Rev. Code §4112.01, (4) OSU has a contractual agreement with OSIF that makes Dr. Nag an intended beneficiary under 42 U.S.C. §1981, (5) OSIF is a state actor or acting under the color of state law (required by 42 U.S.C. §1983), (6) OSU violated his Fourteenth Amendment Rights actionable under §1983, or (7) OSIF retaliated against him for exercising his First Amendment rights actionable under §1983. We examine each argument in turn.

#### A. Title VII Employment Relationship

Title VII and Ohio Revised Code § 4112.02(A) prohibit an "employer" from discriminating because of age. To show a defendant is liable, the plaintiff first must show the defendant is his employer in one of several ways. First, he may show the defendant formally is his employer. *See* 42 U.S.C. § 2000e(b) ("The term 'employee' means a person engaged in an

5

industry affecting commerce who has fifteen or more employees…and any agent of such a person"); Ohio Rev. Code § 4112.01 ("Employer" includes…any person employing four or more persons within the state, and any person acting directly or indirectly in the interest of an employer."). Second, the plaintiff may alternatively show that a parent corporation and its subsidiary can be found to be a "single employer" if the parent corporation "exercises a degree of control that exceeds the control normally exercised by a parent corporation, which is separate and distinct from the subsidiary corporate entity." *Armbruster v. Quinn*, 711 F.2d 1332, 1338 (6th Cir. 1983). Third, the plaintiff may show that the defendant has a sufficiently significant relationship with the plaintiff to be liable under federal and state law as a "joint employer." *Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 993 (6th Cir. 1997).

Defendant OSIF argues that Plaintiff did not allege facts showing he is a direct employee of OSIF or that OSIF and OSU are single or joint employers. (Def.'s Mot. at 8–9.) OSIF claims all of Plaintiff's supervisors were acting in their OSU capacities rather than their OSIF capacities when hiring, firing, and disciplining Plaintiff. (Def.'s Reply at 6.) OSIF also argues Plaintiff did not allege that OSIF and OSU jointly had the ability to hire, fire, and discipline, affect compensation and benefits, and direct and supervise Plaintiff's performance and therefore cannot be found a joint employer. (Def.'s Mot. at 10.) Plaintiff argues that his position as an OSIF officer is a sufficient basis to claim employee status. (Pl.'s Resp. at 9.) Plaintiff also argues that OSIF and OSU are joint employers because the Complaint adequately alleges that supervisors were acting in both their OSU and OSIF capacities when hiring, firing, and disciplining him. (Pl.'s Resp. at 8–9.)

Plaintiff pleads sufficient facts to show that OSIF is his formal employer. The term "employee" in the Title VII context is interpreted broadly and is not centered on the label given

6

to the position. *EEOC v. First Catholic Slovak Ladies Assoc.*, 694 F.2d 1068, 1070 (6th Cir. 1982).  In *First Catholic Slovak Ladies*, the Court held that a non-profit corporation's officers were considered "employees" because they performed "traditional employee duties": managing the non-profit's daily activities, maintaining records, collecting funds for the non-profit and publishing reports. *Id.*  They also drew salaries from the non-profit. *Id.*  Here, like the Plaintiffs in *First Catholic Slovak Ladies*, Plaintiff is an officer of a nonprofit who manages and makes decisions for OSIF, "enhance[s] the revenue-generating function of OSIF," and acts on behalf of OSIF. (Compl. ¶¶ 11, 13.)  Plaintiff's salary comes from OSU, but it is paid "in part through OSIF revenue." (*Id.* ¶¶ 5, 13.) Thus, when viewed in a light favorable to him, Plaintiff's alleged responsibilities are "traditional employee duties" which qualify him as an "employee" for Title VII purposes.

In the alternative, Plaintiff pleads sufficient facts showing OSU and OSIF could be considered a "single employer."  In determining whether to treat two entities as a single employer, courts examine the following four factors: (1) interrelation of operations, i.e., common offices, common record keeping, shared bank accounts and equipment; (2) common management, common directors and boards; (3) centralized control of labor relations and personnel; and (4) common ownership and financial control. *Swallows*, 128 F.3d at 993–994.  Here, Plaintiff's shows common management, common directors and boards, and centralized control of personnel through the following allegations: OSIF employee "activities are directed in part by OSIF" and in part by OSU (Compl. ¶ 5); OSIF employees are selected by OSU through a contractual arrangement between OSU and OSIF (*Id.* ¶ 5); "OSU and OSIF selected a white candidate to replace McNair as OSU Vice President and OSIF's President and CEO" (*Id.* ¶ 42); "OSU and OSIF…replaced Dr. Nag with a white man" (*Id.* ¶ 50); Dr. Nag's termination from OSU also resulted in his removal as

7

an officer and director of OSIF, through Defendant Papadakis's authority as OSIF's board chair and OSU's general control over and dictation of the makeup of the OSIF board (*Id.* ¶ 48); Mr. McNair made reports about Dr. Nag's conduct to both OSU administrators and OSIF officers. (*Id.* ¶ 22.)  OSU and OSIF purportedly share finances, as evidenced by the allegation that OSIF employers are paid by OSU "in part using OSIF revenues." (*Id.* ¶ 5.)  As a whole, these allegations suggest OSIF and OSU are a single employer for Title VII purposes because they share finances and board members and have centralized control of labor relations and personnel.

Using the same allegations above, OSIF may also be considered a joint employer for Title VII purposes.  The Sixth Circuit has defined two or more entities as "joint employers" if they "share or co-determine those matters governing essential terms and conditions of employment." *Carrier Corp. v. NLRB*, 768 F.2d 778, 781 (6th Cir. 1985).  To determine whether an entity is the plaintiff's joint employer, courts consider entities' joint ability to hire, fire or discipline employees, affect their compensation and benefits, and direct and supervise their performance.  *Id.*; *Sanford v. Main St. Baptist Church Manor, Inc.*, 327 F. App'x. 587, 594 (6th Cir. 2009).  The pleadings also support OSIF's status as joint employer because OSU and OSIF allegedly jointly hire and fire OSIF personnel, such as McNair and Dr. Nag, and jointly direct and supervise employees' performance.

B. **Title VII Requirement of 15 or More Employees**

OSIF argues that Dr. Nag did not adequately plead that OSIF has 15 or more employees as required by Title VII because Dr. Nag alleged that OSIF has "15 or more OSU employees." Dr. Nag argues that OSIF employs more than 15 people who are also employed by OSU. (Pl.'s Resp. at 8.)  Drawing this reasonable inference in Plaintiff's favor, it is plausible that OSIF employs 15 OSU employees. Additionally, employees working for both joint employers may be

aggregated for purposes of establishing the Title VII numerosity requirement. *Sanford*, 327 F. App'x at 592–594. Because there are sufficient allegations to show OSIF is Dr. Nag's joint employer, Dr. Nag's allegation that OSIF is an "employer…of more than 15 OSU employees, including Dr. Nag" is sufficient to suggest that OSIF has 15 or more joint employees when aggregated with OSU. (Compl. ¶ 5.)

The Court will not address OSIF's original argument in its Motion to Dismiss of whether OSIF has at least 4 employees under Ohio law. (Def.'s Mot. at 11.) As Plaintiff pointed out in his Response (Pl.'s Resp. at 10) and Defendant acknowledged in its Reply (Def.'s Reply at 8), there is no employee numerosity requirement in Ohio Revised Code § 4112.02 (I) and (J) which alleges discrimination and retaliation by a "person" rather than an "employer." The parties do not dispute that OSIF is a "person."

### C. O.R.C. § 4112.02(J) Aiding and Abetting

Ohio Revised Code § 4112.02(J) makes it unlawful for any person to aid, abet, incite, coerce, or compel employment discrimination. To be liable for aiding and abetting, the defendant "must be involved in or actually have made the decision to discriminate against the employee." *Oster v. Huntington Bancshares Inc.*, No. 2:15-cv-2746, 2017 U.S. Dist. LEXIS 76651, at *66 (S.D. Ohio May 19, 2017) (internal citations omitted).

First, Defendant argues that Plaintiff's aiding and abetting claim is inconsistent with Plaintiff's claims of employment liability because an employer cannot "aid and abet itself." (Def.'s Mot. at 12–13.) This argument is without merit because it is perfectly permissible for parties to plead legal claims in the alternative. *See* Fed. R. Civ. Pro. 8(d)(2)–(3) (permitting the pleading of alternative and inconsistent claims); *see also Lunkenheimer Co. v. Pentair Flow Control Pacificpty Ltd.*, Case No. 2014 U.S. Dist. LEXIS 126395, *18 (S.D. Ohio Sept. 10, 2014)

9

("A plaintiff is clearly permitted to plead alternative or even inconsistent claims without being subject to a motion to dismiss.").

Second, Defendant argues that Plaintiff did not plausibly allege that OSIF was involved in or made any decision to discriminate or retaliate against Plaintiff. (Def.'s Mot. at 11–12.) Defendant contends that the people who discriminated and retaliated against Plaintiff, though they are OSU employees *and* OSIF officers, are presumed to be acting in their OSU capacities. (Def.'s Reply at 4–5.) Further, there is nothing in the complaint indicating they were acting in their OSIF capacities. *Id*. Plaintiff argues that he sufficiently alleged the people who discriminated and retaliated against him worked for OSU and OSIF, and whether they were acting in their OSIF or OSU capacities at each incident of discrimination and retaliation is a question of fact. (Pl.'s Resp. at 9.) This Court agrees.

Plaintiff alleges that Mr. McNair, Mr. Papadakis, and Dr. McPheron discriminated and retaliated against him. The three are also OSIF's board chair, board member, and president and CEO. Plaintiff alleges circumstances involving discrimination and retaliation from the three individuals while Plaintiff was working for both OSU and OSIF. The three did not provide a basis during each conversation as to whether they were working under the "hat" of OSU or OSIF. This is a question of fact proper for discovery. Plaintiff also alleges that McNair prevented Dr. Nag from speaking in OSIF meetings and excluded Dr. Nag from ongoing OSIF activities—behavior attributable to OSIF alone. Thus, when drawing all reasonable inferences in Dr. Nag's favor, there are sufficient allegations that OSIF officers McNair, Papadakis, and McPheron, were "involved in" or "actually made the decision to discriminate against employees" and therefore aided and abetted discrimination or retaliation.

10

### D. 42 U.S.C. § 1981 Contractual Relationship

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts," regardless of race. 42 U.S.C. §1981(a). To "make and enforce contracts" is defined as "the making, performance, modification, and terminations of contracts, and the enjoyment of all benefits and privileges, terms, and conditions of the contractual relationship." *Id.* § 1981(b). To set forth a plausible §1981 claim, the plaintiff must plead that he was a party to, or a beneficiary of a contract, and that he was intentionally discriminated against. *Domino's Pizza v. McDonald*, 546 U.S. 470, 476 (2006); *Han v. Univ. of Dayton*, No. 3:12-cv-140, 2012 U.S. Dist. LEXIS 181079, at *28 (S.D. Ohio Dec. 21, 2012).

OSIF argues that Dr. Nag's § 1981 claim fails to state a claim upon which relief can be granted because Dr. Nag did not plausibly allege that he was a party to, or a beneficiary of a contract with OSIF or was prevented from entering a contractual relationship with OSIF. (Def.'s Mot. at 13–14.) Dr. Nag responds that OSIF's status as his joint employer establishes an employment contractual relationship sufficient for Section 1981. (Pl.'s Resp. at 12.) He also contends that he is an intended beneficiary of the contracts between OSU and OSIF because OSU employees are contracted to act on behalf of OSIF and in return, OSIF pays a portion of their salaries. (Pl.'s Resp. at 14.)

OSIF's potential status as a Title VII joint employer does not necessarily establish that OSIF and Dr. Nag had an at-will employment relationship that is *per se* protected as a contractual relationship under 1981. *See Aquino v. Honda of Am., Inc.*, 158 F. App'x 667, 673 n.3 (6th Cir. 2005). Title VII's broad definitions of employer-employee relationships do not automatically create contractual employment relationships for Section 1981 purposes.

11

There are three explicit allegations of contractual relationships in the complaint: (1) The employees' "services are provided through a *contractual arrangement* between OSU and OSIF, and…are paid in part using OSIF revenues and are intended to benefit from the contractual arrangements between OSU and OSIF" (Compl. ¶ 5) (emphasis added); (2) "Dr. Nag was appointed an officer and director of OSIF through a *written agency agreement* that…granted him privileges and responsibilities. . ." (*Id.* ¶ 11) (emphasis added); (3) "[T]hrough *contractual arrangements* with OSU, [OSIF] provided OSU both general revenues and specific funds. . ." (*Id.* ¶ 13) (emphasis added). These allegations refer to contracts between OSU and OSIF, not between OSIF and Dr. Nag. Dr. Nag cannot assert rights in contracts between OSU and OSIF unless he is an intended beneficiary. *See Domino's*, 546 U.S. at 477.

The Sixth Circuit has said that "[f]or a third-party beneficiary to be an intended beneficiary, the contract must have been entered into by the parties *directly or primarily* for the benefit of that person." *Lawyers Title Co., LLC v. Kingdom Title Sols., Inc.*, 592 F. App'x 345, 352 (6th Cir. 2014) (citing *Westwinds Dev. Corp.*, 2009-Ohio-2948, 2009 WL 1741978, at *3). "[T]he mere conferring of some benefit on the supposed beneficiary by the performance of a particular promise in a contract was insufficient; rather, the performance of that promise must also satisfy a duty owed by the promisee to the beneficiary." *Norfolk & W. Co. v. United States*, 641 F.2d 1201, 1208 (6th Cir. 1980).

The Court does not consider the conclusory allegations that Dr. Nag is "intended to benefit from the contractual arrangements between OSU and OSIF." (Compl. ¶ 5.) But the Complaint also pleads, "Dr. Nag was appointed an officer and director of OSIF through a written agency agreement that…granted him privileges and assigned him responsibilities to act on behalf of OSIF." (*Id.* ¶ 11.) Dr. Nag's privileges and responsibilities included "voting rights, attendance at

meetings, indemnification for expense and liability purposes, and participation in decision-making related to OSIF's activities." (*Id*.) "[T]hrough contractual arrangements with OSU, [OSIF] provided OSU both general revenues and specific funds earmarked for…the compensation of Dr. Nag." (*Id.* ¶ 13.) When drawing all reasonable inferences in Dr. Nag's favor, the allegations plausibly suggest OSU and OSIF's contractual arrangements directly benefited Dr. Nag by giving him officer status, compensation, privileges, and additional responsibilities.

OSIF attaches two excerpts from contracts between OSU and OSIF in support of its Motion to demonstrate that the contracts were not meant to benefit Dr. Nag. (Def.'s Mot. Exh. 1, 2.) OSIF's first exhibit to their Motion is the "Authorization for Establishment of a New University Affiliate," which reads in part, "Trustees, officers, and employees of The Ohio State University are hereby authorized, designated, and directed to serve as directors, managers, officers, employees, and agents of OSIF and its subsidiaries . . ." (Def.'s Mot. Exh. 1.) The second exhibit is the "First Amended and Restated Master Agreement" between OSU and OSIF which states that the Agreement does not give "any person, other than the parties hereto, any legal or equitable rights in connection with this Agreement." (Def.'s Mot. Exh. 2.) OSIF states that this second exhibit shows that the contracts between OSU and OSIF were not intended to give "any legal or equitable rights" to Dr. Nag because he is not a party to the contract. Dr. Nag counters that the Court should allow this dispute to proceed to discovery because the contracts in full may show that he is an intended beneficiary.

A court may consider a "document referred to in the pleadings. . .[that] is integral to the claims. . .without converting a motion to dismiss into one for summary judgment." *Derbabian v. Bank of Am., N.A.*, 587 F. App'x 945, 952 (6th Cir. 2014). Since both parties address the contract excerpts in briefing and confirm the attached excerpts are the contracts referred to in the pleadings, the

13

Court considers the contracts but concludes that further discovery is proper to determine whether Dr. Nag is an intended beneficiary as the contracts are not submitted in their entirety. Therefore, based on the pleadings, Dr. Nag shows that he has a plausible claim against OSIF for contract discrimination based on race under Section 1981.

### E. 42 U.S.C. § 1983, Fourteenth and First Amendment Violations

####    a. State Actor, Acting Under Color of State Law

Section 1983 provides a remedy for deprivations of rights secured by the Constitution when that deprivation takes place "under color of state law" or by a "state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936 (1982). Private conduct may be considered state action if there is a "close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Assoc.*, 531 U.S. 288, 295 (2001). The Supreme Court has set forth three tests to determine whether private conduct may be fairly attributable to the state: (1) the public function test; (2) the state compulsion test; and (3) the symbiotic relationship test. *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992) (internal citations omitted).

OSIF argues that Dr. Nag's section 1983 claim for violation of the First and Fourteenth Amendment fails to state a claim for relief because OSIF is not a state actor did not act under color of state law and is not a state actor. (Def.'s Mot. at 16.) Dr. Nag argues that OSIF's is liable under the state compulsion test and symbiotic relationship test. (Pl.'s Resp. at 18.)

The state compulsion test "requires that a state exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state." *Wilcher v. City of Akron*, 498 F.3d 516, 519 (6th Cir. 2007). Dr. Nag alleges and OSU admits that Dr. Nag could no longer serve as director or officer of OSIF once

14

he was terminated from OSU because he only served in those roles for OSIF by virtue of his position with OSU. (Compl. ¶ 48.) Thus, when reading the pleadings in a light most favorable to Dr. Nag, it is plausible that he was terminated from OSIF through coercion or encouragement from OSU.

Based on the pleadings, OSIF and OSU's relationship also satisfies the symbiotic test. Under the symbiotic test, the action of a private party constitutes state action where "there is a sufficiently close nexus between the state and the challenged actions of the regulated entity so that the action of the latter may be fairly treated as that of the state itself." *Wilcher*, 498 F.3d at 520. Dr. Nag's services are "provided through a contractual arrangement between OSU and OSIF, whose selection OSIF delegates to OSU but whose activities are directed in part by OSIF." (Compl. ¶ 5.) Again, OSU allegedly dictates OSIF's staff management, indicating a sufficiently close nexus between OSIF and OSU's operations so that OSIF's conduct relating to staff management may fairly be attributed to that of OSU itself. In sum, Dr. Nag sufficiently pleads that OSIF was acting under the color of state law or was a state actor for purposes of Section 1983 through the state compulsion or symbiotic test.

      b. <u>Fourteenth Amendment Violation</u>

OSIF argues that Dr. Nag did not plead facts to show that OSIF violated his Fourteenth Amendment Equal Protection rights actionable under Section 1983 because he did not allege that OSIF treated him disparately as compared to similarly situation persons based on his race. (Def.'s Mot. at 16.) "A threshold requirement for an Equal Protection claim" is that a plaintiff provides sufficient evidence that he or she was treated differently from similarly situated persons*. Ryan v. City of Detroit*, 698 F. App'x 272, 281 (6th Cir. 2017). Dr. Nag sufficiently pled that he was treated disparately from similarly situated persons when he alleged that Mr. McNair, President and

15

Chief Executive Officer of OSIF, "instructed him to not speak during meetings involving both OSU and OSIF but allowed white employees with less expertise and knowledge of the subject matter of the meetings to speak" and excluded Dr. Nag from ongoing OSIF activities while other white employees were not excluded. (Compl. ¶¶ 14, 20.)

  c. <u>First Amendment Retaliation</u>

OSIF further argues that Dr. Nag did not allege facts to show OSIF retaliated against him for exercising his right to First Amendment free speech protected by Section 1983. (Def.'s Mot. at 17.) A plaintiff pleading a retaliation claim for exercising a constitutional right must allege: (1) he engaged in constitutionally protected activity; (2) defendant's adverse action caused him to suffer an injury that would likely chill a person of ordinary firmness from continuing in that activity; and (3) defendant's adverse action was motivated at least in part as a response to the exercise of his constitutional rights. *Evans-Marshall v. Bd. of Educ.*, 428 F.3d 223, 228 (6th Cir. 2005).

The parties dispute the third element—whether Dr. Nag adequately alleged that OSIF's decision to terminate him was based on his internal complaint of a hostile work environment. OSIF argues that it was forced to fire Dr. Nag because he was no longer an OSU employee, not because he filed an internal complaint. (Def.'s Mot. at 17.) But as determined above, Papadakis and McPheron, the OSU employees and OSIF officers who fired Dr. Nag, may have been acting in their OSIF capacities as well as their OSU capacities when they fired Dr. Nag for submitting an internal complaint. Therefore, based on the pleadings, their conduct is attributable to OSIF as well as OSU and Dr. Nag's Section 1983 claim for retaliation against his First Amendment rights must survive.

## IV. Conclusion

For the foregoing reasons, the Court **DENIES** Defendant OSIF's Motion to Dismiss Plaintiff's First Amended Complaint. (ECF No. 21.) The Court also **DENIES** Plaintiff's Motion to File a Sur-Reply as **MOOT**. (ECF No. 31.) This case is to remain open.

**IT IS SO ORDERED.**


**9/22/2021**                                              s/Edmund A. Sargus, Jr.
**DATE**                                                   **EDMUND A. SARGUS, JR.**
                                                           **UNITED STATES DISTRICT JUDGE**